2020 IL App (2d) 170890-U
No. 2-17-0890
Order filed May 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CM-3619 |
| | ) | |
| ASHLEY R. THOMASON, | ) | Honorable |
| | ) | Helen S. Rozenberg, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant was not denied a fair trial by the State's failure to introduce lineup evidence as promised in its opening statement: the trial court initially conditioned admission of the evidence on the State's compliance with the statute governing how lineups are prepared and administered, but those requirements do not govern admissibility and, under the circumstances, there was no reasonable probability that presenting the evidence would have produced a different result, as the jury was instructed to disregard any statement not based on the evidence.

¶ 2   Following a jury trial, defendant, Ashley R. Thomason, was convicted of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2016)), and she was sentenced to 12 months of conditional discharge and ordered to pay restitution. She timely appeals, arguing that she was

denied a fair trial when the State, who told the jury that it would hear testimony about a photo lineup, failed to call to testify the officer who prepared the lineup. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Before her trial began, defendant filed a motion *in limine*, asking that the State "be barred from referencing or eliciting any results of a photo line up [*sic*] unless and until the foundational requirements of [section 107A-2 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/107A-2 (West 2016))] are met prior to any witness testifying to the results." The State did not object.

¶ 5       At trial, the State told the jury during its opening statement that it would hear testimony from Officer Jeremiah Scheithe, who presented the lineup to the victim, Juan Perez. The State asserted that Scheithe, who had "no involvement other than to administer this photo lineup," showed Perez the lineup, and Perez "quickly identified—." At this point, defendant objected, noting that this "is the source of [her] motion in limine." Defendant continued that she did not "believe the State is going to be able to lay a sufficient foundation with just the one officer that they have with a photo lineup based on the requirements of the statute controlling photo lineup foundation." The trial court overruled the objection, noting that, if the State failed to present a sufficient foundation, "[defendant will] want to say something in closing about how [the State] presented that evidence."

¶ 6       Perez was the only witness to testify at trial. He stated that, on the afternoon of September 10, 2016, he was driving home after getting his car washed when he saw a woman in a black Jeep driving erratically. Perez saw the woman, who appeared very angry, in his rearview mirror. She was honking her horn, saying things Perez could not hear, and waving her middle finger at him.

Although Perez described the woman as light skinned, he testified that he was unsure about her hair color.

¶ 7    The woman, who had the Jeep's windows down, eventually passed Perez. When she did, Perez, who also had his windows down, got a better look at her.

¶ 8    As Perez got closer to his home, he saw the woman in the black Jeep parked on a median. Perez looked over at the Jeep and slowly drove by. The woman again said things to Perez that he could not hear, and she threw a container that dented the driver's door of his car. A liquid came out of the container, the liquid hit Perez in the face, and Perez lost control of his car. He swerved into a ditch and turned off his car.

¶ 9    Perez saw the Jeep turn into a neighborhood and up to a house. He phoned the police. The police prepared a report and gave it to Perez.

¶ 10   Later that night, Scheithe came to Perez's home with a photo lineup. Before the State elicited any further testimony about the lineup, the following exchange was had:

> "Q. [ASSISTANT STATE'S ATTORNEY WANZENBERG]: Okay. Before we get into the photo lineup, do you see the driver of the black Jeep in court today?
>
> A. Yes.
>
> Q. Could you describe them with an article of clothing or where their location is?
>
> A. Location to my left in front of me. She's a female driver—or a female, blonde hair now. At the time I remember seeing her with a different color hair. To me it looked as if it was red or a different shade of brown, but not what I see today.
>
> Q. Okay. And can you point to the person that you see?
>
> A. (Indicating.)

Q. MS. WANZENBERG: Let the record reflect that the witness is pointing to the defendant.

THE COURT: So noted."

The State then continued to question Perez about the lineup. After presenting the lineup to Perez, Perez testified that he circled the photo of the offender. Defendant objected. In a sidebar, the following exchange was had:

"MS. LEIMBACK [(ASSISTANT PUBLIC DEFENDER)]: Your Honor, the proper foundation for the photo lineup has not been raised. Under 725 ILCS 5/1[0]7[A]-2. Part of the foundation they have not covered is the foundation requirements for how the photo lineup has been put together, where the pictures came from and who in fact was the subject in the photo.

MS. WANZENBERG: Your Honor, I would ask—I am still in the process of laying the foundation. The witness is testifying to what was presented to him and what he did with that material.

THE COURT: That is correct. If the State doesn't have testimony to support the foundation, it is inappropriate to pursue this particular line. I would assume by your response that you intend to present a full foundation.

MS. WANZENBERG: Your Honor, the officer who administered the photo lineup[, Scheithe,] is here as well.

THE COURT: That is neither here nor there. The objection is that the full foundation will be presented. I take it from what you are saying is that this officer is the one who put the [lineup] together?

MS. WANZENBERG: Right.

MS. LEIMBACK: No, he's not.

MR. LENZINI [(ASSISTANT STATE'S ATTORNEY)]: He was an independent administrator.

THE COURT: Well, it sounds like Miss Leimback's objection is well taken."

¶ 11 The trial court sustained defendant's objection. The trial court did not advise the jury to disregard the testimony about the lineup, and defendant never asked the court to do so.

¶ 12 The trial court admitted photographs of Perez's car. They showed only a residue on the windshield and little, if any, damage to the driver's door.

¶ 13 At some later date, Perez took his car to a body shop for an estimate to repair the damage. Although Perez asked for an estimate just to repair the door, the body shop also gave him an estimate to repair the bumper and the cover of a fog lamp. Perez gave that estimate to the State.

¶ 14 Defendant moved for a directed finding, noting that "[t]he only identification in court is the one that was just made." The trial court denied the motion.

¶ 15 During closing arguments, the State noted that Perez identified defendant in court. The State emphasized Perez's testimony that he saw defendant throw the container at his car, he clearly remembered that the offender was a woman, and he remembered her so well that he was able to testify that she changed her hair color.

¶ 16 Defendant argued that the jury should find her not guilty because the State's case suffered from four problems, one of which was identifying defendant as the offender. In highlighting this problem, defendant asserted:

"One year later[, Perez] comes in and he points the finger at [defendant]. You heard a bunch of talk and the State told you in its opening that there was a photo lineup, but we

don't know what the results were of that; we weren't presented with anything. One identification just now a year later.

        And if you think about it, listen to what Mr. Perez told you when he was testifying about what he saw. *** [Perez did not testify about any] specific identifications, no identifying marks, he didn't give you a license plate number, you didn't hear anything about who owned the car, you didn't hear anything about who lived at that address where the [Jeep] was located, if anybody was arrested at that address. Nothing. You have an identification for a year later, that's it. That's a big hole. There's a lot missing there. That is not proof beyond a reasonable doubt."

¶ 17    While administering the jury instructions, the trial court advised the jury that it should disregard any opening statements or closing arguments that were not based on the evidence. The court also admonished the jury that it should disregard any evidence to which an objection was sustained.

¶ 18    During deliberations, the jury asked for a clear definition of reasonable doubt. The trial court, with the parties' agreement, told the jury that it had to determine reasonable doubt. Later, the jury advised the trial court that it could not reach a unanimous verdict. The court gave the jury an instruction pursuant to *People v. Prim*, 53 Ill. 2d 62 (1972).

¶ 19    The jury found defendant guilty. She filed a posttrial motion, arguing that she was denied a fair trial because the State violated the trial court's order granting her motion *in limine*. Specifically, defendant claimed that the State violated the order by referencing the lineup in its opening statement and while questioning Perez, knowing that it could not establish a proper foundation. Defendant claimed that references to the lineup prejudiced her, because the jury could

infer that Perez identified her soon after the incident, rather than just in court, and that defendant was hiding that result from the jury.

¶ 20    Defendant emphasized that Perez was not credible because he attempted to obtain restitution for damages not caused by defendant, the jury asked for a definition of reasonable doubt, and the jury could not initially reach a unanimous verdict.  Thus, he concluded, the evidence of guilt was closely balanced and supported his contention that the State's violation of the order *in limine* caused the jury to convict her.

¶ 21    The trial court denied defendant's posttrial motion, finding that compliance with section 107A-2 of the Code (725 ILCS 5/107A-2 (West 2016)) is not foundational.  Rather, the court found that this section concerned the weight given to lineup evidence.  Given that, the trial court noted that it should not have granted defendant's motion *in limine* or the objection to Perez's testimony about the lineup.  Moreover, the court observed that defendant actually benefited from the jury not hearing evidence of the lineup.  Defendant timely appealed.

¶ 22                                II. ANALYSIS

¶ 23    At issue in this appeal is whether defendant was denied a fair trial when the State failed to lay a foundation for the admission of the photo lineup.  In addressing that issue, we first consider whether, as defendant contends, section 107A-2 of the Code (725 ILCS 5/107A-2 (West 2016)) delineates the foundational requirements for admitting photo lineup evidence.  As this issue requires us to examine the statute, our review is *de novo*.  *People v. Clark*, 2019 IL 122891, ¶ 17. Section 107A-2 of the Code is divided into 11 subsections.  Section 107A-2(a) of the Code provides that "[a]ll lineups shall be conducted using one of the following methods."  725 ILCS 5/107(a) (West 2016).  This section then delineates how lineups can be presented to eyewitnesses. *Id.*  Section 107A-2(b) of the Code mandates that law enforcement agencies adopt guidelines for

when, if at all, simultaneous and sequential lineups will be used. *Id.* § 107A-2(b). Under section 107A-2(c) of the Code, the legislature indicated that, in the absence of contrary authority, there is no preference between a live and a photo lineup. *Id.* § 107A-2(c). Section 107A-2(d) of the Code sets out how sequential lineups should be conducted. *Id.* § 107A-2(d). Section 107A-2(e)(1) of the Code outlines what instructions the administrator of the lineup shall give the eyewitness before conducting the lineup. *Id.* § 107A-2(e)(1). That section then provides that the eyewitness shall acknowledge in writing receipt of the instructions, and a notation shall be made regarding whether the eyewitness agreed to be recorded making an identification. *Id.* § 107A-2(e)(2). Section 107A-2(f) of the Code dictates what the administrator shall do in conducting the lineup. *Id.* § 107A-2(f). Under section 107A-2(g) of the Code, the lineup administrator is instructed to make an official report of all lineups, and that section then delineates what the official report shall contain. *Id.* § 107A-2(g). Section 107A-2(h) of the Code directs that a video of all lineup procedures shall be made unless impractical or the witness refuses. *Id.* § 107A-2(h). That section then directs what the administrator shall do if no recording was made. *Id.* Section 107A-2(i) of the Code provides that materials related to the lineup shall be disclosed to defense counsel and that steps shall be taken to protect the identity of any people in the lineup who are not the defendant. *Id.* § 107A-2(i). Section 107A-2(j) of the Code indicates that "[a]ll of the following shall be available as consequences of compliance or noncompliance with the requirements of this Section." *Id.* § 107A-2(j). This includes granting a motion to bar identification evidence or instructing the jury that it may consider all the facts and circumstances related to compliance with this section in assessing the weight of a witness's identification testimony. *Id.* Last, section 107A-2(k) of the Code simply directs that any electronic recording made pursuant to this section shall not be copied, shown, or transmitted to any unauthorized person. *Id.* § 107A-2(k).

¶ 24   In interpreting section 107A-2 of the Code, we are guided by the well-settled rules of statutory construction.  "The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature." *Clark*, 2019 IL 122891, ¶ 18.  "All other canons and rules of statutory construction are subordinate to this cardinal principle." *Id.*

¶ 25   "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 20.  "In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute." *In re L.W.*, 2018 IL App (3d) 170405, ¶ 15.  "If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction." *Id.*  "A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent." *Id.*

¶ 26   With these principles in mind, we conclude that the plain language of section 107A-2 of the Code does not address the foundational requirements for admitting photo lineup evidence at trial.  Rather, the statute governs how lineups are prepared and administered.  As the trial court held, we determine that the failure to comply with section 107A-2 of the Code goes to the weight, not the admissibility, of lineup evidence.  Because nothing in section 107A-2 of the Code concerns the foundational requirements for admitting photo lineups, we, like the trial court, determine that defendant's motion *in limine* and her objection to Perez's testimony about the lineup should have been denied.  Thus, we conclude that defendant was not denied a fair trial.

¶ 27   Even if section 107A-2 of the Code prescribed the foundational requirements for admitting lineup evidence at trial, the State's failure to lay a foundation by calling the officer who prepared the photo lineup did not prejudice defendant or deny her a fair trial.  First, "there is no requirement

that a witness to a crime make a pretrial identification of the accused." *In re Johnson*, 43 Ill. App. 3d 549, 551 (1976). Thus, the State's failure to present the lineup evidence did not itself deny defendant a fair trial. Second, when an eyewitness positively identifies the defendant in court as the perpetrator, the defendant is not prejudiced by the State's failure to lay the foundation for the admission of pretrial identification evidence. See *People v. Bell*, 217 Ill. App. 3d 985, 999 (1991) (the defendant was not prejudiced when the trial court, and not the State, laid the foundation for admission of photo lineup evidence because, even in the absence of such evidence, the young witness identified the defendant in court and in the police station a day after the incident). Here, Perez positively identified defendant in court as the woman who threw a container at his car, and he did so before the State asked him any questions about the photo lineup. Third, the jury was admonished to disregard any part of the State's opening statement that was not based on the evidence and any testimony to which an objection was sustained. Because nothing in the record indicates that the jury did not follow those admonishments, we must conclude that defendant was not prejudiced by the State's failure to present the photo lineup, after alluding to it. See *People v. Johnson*, 208 Ill. 2d 53, 116 (2003). And, even if the jury was tempted to consider the absence of any photo lineup evidence in finding defendant guilty, defendant effectively highlighted in her closing why it should not, arguing specifically that the conditions and results of that lineup were unknown.

¶ 28    Last, and most importantly, any error the State made in not presenting the photo lineup evidence was harmless. "A trial error normally may be deemed harmless, and therefore not sufficient to trigger reversal, where there is no reasonable probability that the jury would have acquitted the defendant absent the error." *People v. Blan*, 392 Ill. App. 3d 453, 459 (2009). Here, although the evidence against defendant was not overwhelming, as the jury asked for a definition

of reasonable doubt and initially could not reach a verdict, there is no reasonable probability that, if the photo lineup evidence was admitted, defendant would have been acquitted. Indeed, such evidence may have strengthened the State's case and further convinced the jury of defendant's guilt.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 31    Affirmed.